UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 3:09-cr-322-TJC-PBD

DANIEL WILLIAM VIGIL

## UNITED STATES' RESPONSE IN OPPOSITION TO VIGIL'S SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE

The United States opposes Vigil's supplemental motion for compassionate release based on COVID-19 concerns. Doc. 118. Records received from the Bureau of Prisons ("BOP") reflect that Vigil has not exhausted his administrative remedies - a requirement for jurisdiction to exist with this Court to review his request. Because Vigil has not exhausted his administrative remedies through the BOP, his motion is due to be denied.  Even so, Vigil's request, as it stands, is without merit. Vigil does not demonstrate that his medical conditions satisfy the requirements for compassionate release. Concerns of contracting COVID-19, alone, does not provide relief. Further, under the 3553(a) factors Vigil's offense contained violence and his release would place a risk on the community.

## BACKGROUND

On December 13, 2010, Vigil plead guilty with the benefit of a plea agreement to Counts One and Three of the Indictment for bank robbery, in violation of 18 U.S.C. § 2113(a). Docs. 54, 56. This Court sentenced Vigil to a total of 135 months' imprisonment and 3 years of supervised release. Doc. 73.

Vigil is currently incarcerated at Forrest City Medium FCI, located in Forrest City, Arizona, is 62 years old, and is projected to be released on June 14, 2022. *See* Bureau of Prisons (BOP) Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on June 29, 2020). On June 15, 2020, Vigil filed his supplemental motion for compassionate release based in large part on concerns surrounding contracting COVID-19 within the BOP facility where he is incarcerated. Doc. 118.

## MEMORANDUM OF LAW

A court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with applicable policy statements of the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Under this statute, as amended by Section 603(b) of the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Examples of qualifying "extraordinary and compelling reasons" include (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children. *See* USSG §1B1.13 comment. (n.1). Even when an extraordinary and compelling reason exists, however, a court should

2

only grant a motion for release if it determines that the defendant is not a danger to the public. USSG §1B1.13(2). And the court must consider, in general, whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

Previously, only the BOP was authorized to file a motion for compassionate release. The First Step Act changed this by permitting defendants to file such a motion as well. *See* First Step Act of 2018, 115 P.L. 391, § 603(b)(1). Before a defendant may file such a motion, however, he or she must have either (a) "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (b) 30 days must have lapsed since the receipt of such a request by the warden of the prison. 18 U.S.C. § 3582(c)(1)(A). The failure to have exhausted such administrative remedies within the BOP is fatal to a defendant's motion for compassionate release. *United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (published) (per curiam) ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); *see also United States v. Estrada Elias*, No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129-JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241); *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (same);

*United States v. Alexander*, 609 F.3d 1250, 1260 (11th Cir. 2010) (same).

### A. Vigil has not exhausted his administrative remedies which is fatal to his motion.

Vigil has not exhausted his administrative remedies, which as noted in prior paragraphs, is fatal to his claim. Vigil appears to allege in his motion that his sister's submitted request with this Court counts towards his exhaustion. Doc. 118. Records reflect that a document requesting compassionate release was received by the BOP on June 25, 2020. *See* attached Request for Compassionate Release from Family Member (Attachment 1). Additionally, Vigil claims to have submitted a request with BOP on June 1, 2020. *Id.* However, based on records received from BOP, his request for relief through this Court remains premature.

On June 25, 2020 and June 26, 2020, the United States reached out to Vigil's unit team who confirmed that Vigil submitted an unsuccessful request for compassionate release on March 4, 2020 that did not adhere to Program Statement 5050.50, as required. BOP Program Statement 5050.50, Compassionate Release /Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Relevant here, Policy Statement 5050.50 states that a request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. *Id.* Further, that such a request is ordinarily in writing and submitted by the inmate. *Id.* An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling

circumstances which could not reasonably have been foreseen by the court at the time of sentencing. *Id.* The inmate's request shall at a minimum contain (1) the extraordinary or compelling circumstances that the inmate believes warrant consideration; and (2) proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment. *Id.* Although the Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request, the request would also be required to adhere to the aforementioned requirements. *Id.*

    Email communications and contact with his unit team confirm that his request was returned to his unit team on April 2, 2020 to orally inform him of the need to re-submit appropriately. *See* attached Email from BOP (Attachment 2). Since the request was not valid, a document was not provided. The unit team confirmed that Vigil never resubmitted his request. *Id.* There is also no indication from BOP staff that Vigil submitted a request on June 1, 2020.  Even if such a request did exist, exhaustion would be premature. Regarding the document submitted by Vigil's family, that request does not conform to Policy Statement 5050.50, discussed above, and was only just received. As such, any reference to it as a means of exhaustion, with only one day having passed, would also be premature at this time.

    An inmate may appeal the Warden's compassionate-release denial through

BOP's administrative remedies program. 28 C.F.R § 571.63(a). Here, Vigil has failed to exhaust his administrative remedies. The attached BOP records reflect that Vigil has not administratively appealed any such request, which is fatal to his motion. This Court should not entertain Vigil's motion for compassionate release absent that appeal (or after 30-day lapse from such an appeal). *Elgin*, 2019 U.S. Dist. LEXIS 86571, at *3. Only a denial at the level of either the BOP's director or general counsel constitutes a "final administrative decision" that may not be further appealed within the administrative remedies program, 28 C.F.R. § 571.63(b), (d). Vigil does allege that he has submitted a request for reduction in sentence under the provisions of compassionate release. He has not, however, filed an appeal to the Warden's compassionate-release denial through BOP's administrative remedies program, *id.* Nor has he allowed 30-days to pass from his submission. Therefore, absent a final administrative decision, an inmate has failed to exhaust his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Here, Vigil has not met either his exhaustion or delay requirement in order for this Court to have jurisdiction to review it in this Court. Accordingly, his motion should be denied.

The requirement of a 30-day period to afford the BOP to conduct an initial review of Vigil's request cannot, and should not, be circumvented. Although Congress authorized in the First Step Act the expansion of the availability of compassionate release, it expressly imposed on inmates the requirement of an initial resort to administrative remedies. This is for good reason -- the BOP

6

conducts an extensive assessment of all such requests and is in the best position to do so.  *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g). Accordingly, the BOP completes a diligent and thorough review concerning both the inmate and the conditions of confinement.  This assessment is of considerable value to the parties and the Court.  This remains especially true during the present COVID-19 crisis.

**B.    Vigil does not establish any "extraordinary or compelling" reasons for his release.**

Vigil argues that he should be released because of concerns of a COVID-19 outbreak within his facility.  Doc. 118.  However, COVID-19 exposure alone is not an extraordinary and compelling reason to grant release under any circumstances. *Raia*, 2020 WL 1647922 at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *see also United States v. Zywotko*, No. 2:19-CR-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("'General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release ....'") (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release

7

because BOP's proposed plan adequately addresses the COVID-19 pandemic).[1] USSG §1B1.13 sets out that "extraordinary and compelling reasons" for release include (1) terminal illness; (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison; or (3) the death of the caregiver of the defendant's minor children.  comment. (n.1).

To classify COVID-19 alone as an extraordinary and compelling reason would be inconsistent with the text of the statute and the policy statement, but it would be detrimental to the BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria that the BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement.  Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.  Thus, Vigil's attempted leveraging of

---

[1] *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

the current pandemic without providing support of any meritorious conditions, does not and should not qualify him for relief.

In his motion, Vigil alleges that he has high blood pressure, diabetes, and hepatitis C, among "other medically serious conditions." Further, that due to needing knee replacements, he is confined to a wheelchair. Relevant here, Vigil has to prove that his issue(s) are (1) terminal; or (2) a serious medical condition that substantially diminishes the ability of the defendant to provide self-care in prison. comment. (n.1).  Vigil's motion fails for two reasons.

First, Vigil does not provide the appropriate documentation (full medical records) to demonstrate the status of his conditions. Vigil's failure to provide such documentation of a medical condition that would support a meritorious reason for release is detrimental to his claim. Accordingly, he is unable to meet his burden of proof in order to proceed.  *United States v. Hamilton,* 715 F.3d 328, 337 (11th Cir. 2013) (a defendant seeking a sentence reduction under 18 U.S.C. § 3582(c)(2) bears the burden of proving that such a reduction is appropriate).

Second, at face-value, Vigil's conditions do not appear to prevent him from providing self-care. Although he alleges that he is confined to a wheelchair, there is no indication of how that is preventing him from performing daily tasks, and if so, what tasks it prevents him from performing. Without documentation to assist in the review of his conditions, there is no way to review the severity or whether they are controlled. Accordingly, his request fails to provide a meritorious reason for his release.

To expand on Vigil's conditions as they relate to COVID-19, the Center for Disease Control (CDC) has noted that individuals with certain pre-existing health conditions could be at a higher risk for severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-highis-risk.html. Vigil asserts he has chronic conditions of high blood pressure, diabetes, hepatitis C, and knee issues. Without additional documentation to expand on the severity and level of his medical conditions, as well as any medications, there is no way to expand on his medical conditions as they relate to CDC-risk factors.

Vigil who is 62 years old, may be at a higher risk for disease based on the CDC guidance. Medical conditions also play a part in risk of infection. On June 25, 2020, the CDC updated their website to reflect changes based on recent data. Medical conditions that may place individuals at risk are now under two categories (1) at an increased risk and (2) *might* be at an increased risk. Most relevant for Vigil, in addition to age, is his allegation surrounding diabetes and Hepatitis C, which is considered a liver disease. Vigil does not provide documentation to substantiate his current conditions and treatment as they relate to his conditions. Therefore, because Vigil provides insufficient support for his conditions and, particularly how his conditions are not well-controlled or prevent him from providing self-care, his request for a sentencing reduction fails.

Since concerns surrounding contracting COVID-19 is not an extraordinary and compelling reason for reduction in sentence and because Vigil provides *no*

*support* of a condition or circumstance that is an "extraordinary or compelling reason" for release, his motion is due to be denied.

C. **BOP has responded and continues to respond appropriately to COVID-19.**

The United States does not contend that COVID-19 is not a serious illness that, in a short time, has caused many deaths in the United States and a massive disruption to our society and economy. However, the BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement located at https://www.bop.gov/resources/news/20200319_covid19_update.jsp. The BOP has had a Pandemic Influenza Plan in place since 2012. *See* BOP Health Services Division, Influenza Plan-Module 1: Surveillance and Infection Control at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed. It establishes a six-phase framework requiring BOP facilities to begin preparations when these is first a "[s]uspected human outbreak overseas." *Id*. at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, the BOP began planning for potential coronavirus transmissions in January 2020 by establishing a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control, including by reviewing guidance from the World Health Organization.

On March 13, 2020, BOP began to modify its operations, in accordance with its Coronavirus (COVID-19) Action Plan ("Action Plan"), to minimize the risk of

11

COVID-19. Since this date, BOP has continued to evolve and modify it operations in phases. Details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

BOP statistics indicate that, as of June 29, 2020, there are zero inmates and four staff members reported with COVID-19 within Vigil's facility (Forrest City Medium FCI). *See* BOP COVID-19 Cases at https://www.bop.gov/coronavirus/index.jsp. Even so, BOP has reported that they are taking extraordinary measures to care for inmates and prevent the spread of infection. This disease is unfortunately found to be affecting many cities and communities across America, not just the individuals housed and working in Vigil's BOP facility. Vigil simply has not made a factual record providing that his needs and the level of care required for him and his alleged condition will not be met while detained at his BOP facility nor has he established a record that shows he is at a higher risk inside his BOP facility than he would be if released.

For all of these reasons, BOP, and Vigil's facility, continues to be best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background, medical history, and specific considerations regarding the conditions and needs at a particular facility. Therefore, the provision of Section 3582(c)(1)(A) that requires exhaustion of administrative review makes sense not only in ordinary times, but also during the current pandemic. As the Third Circuit has noted,

"[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 2020 WL 1647922, at *2.

**D.     The BOP may designate certain inmates to a term of home confinement.**

Further, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, the BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).

Congress has also acted to enhance the BOP's flexibility to respond to the pandemic. Under the CARES Act, enacted on March 27, 2020, the BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General gave the BOP Director the authority to exercise this discretion, beginning at the facilities that so

13

far have seen the greatest incidence of coronavirus transmission. *See* April 3, 2020 Memorandum to Director of Bureau of Prisons.[2]

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But the BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider a myriad of other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

---

[2] BOP has described its increased use of home confinement on its website: https://www.bop.gov/resources/news/20200405_COVID19_home_confinement.jsp. 17. Inmates do not need to apply to be considered for home confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. While all inmates are being reviewed for suitability for home confinement, any inmate who believes he or he is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager.

E.  **Even if an extraordinary and compelling reason for release was established, the applicable Section 3553(a) factors should be weighed carefully.**

Assuming *arguendo* that Vigil had provided a meritorious reason for relief, Vigil has still not met his burden of establishing eligibility for early release. Setting COVID-19 concerns aside, this Court must deny release unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the section 3553(a) factors, as "applicable," as part of its analysis. *See* section 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Here, Vigil was charged with having committed bank robbery with the elements of his charge including force, *violence*, or intimidation and should not qualify for release. The factual basis section within his plea agreement indicates that during the June 2, 2009 robbery of the Compass Bank at 14381 Beach Boulevard, the defendant placed his hand inside his shirt as if he had a weapon. Doc. 56 at 11. The factual basis established Vigil committed three bank robberies, one on May 30, 2009 and two on June 2, 2009. *Id.* at 11-12. At the time that Vigil committed these robberies, he was on supervised release for armed bank robbery. PSR at 11. During that offense, Vigil, on May 1, 2002, robbed the Atlantic National Bank in Brunswick, Georgia and pointed a firearm at the teller and branch manager. *Id.* Then on June 4, 2009, Vigil committed a robbery of the Wachovia Bank at 411 Seabreeze, Daytona Beach, Florida. *Id.* at 12. Vigil robbed a total of five separate banks. Vigil's criminal history also included convictions for burglary, DUI, domestic violence, battery, and use or intent to use

drug paraphernalia. *Id.* at 9-13. Accordingly, Vigil has not met his burden of establishing eligibility, and the section 3553(a) factors weigh strongly against granting compassionate release.

18 U.S.C. 3582(c)(1)(A) provides that a sentencing court may not modify a term of imprisonment until it has considered applicable factors set forth in section 3553(a). The nature and circumstances of this case, and Vigil's criminal history, reflects the necessity to prevent Vigil from prematurely returning to the community.

Lastly, Vigil's premature release would infringe on the victim's right to reasonable protection provided under the Crime Victims' Rights Act, which specifies that crime victims have "[t]he right to be reasonably protected from the accused."[3] 18 U.S.C. § 3771(a)(1). The CVRA requires that the Court "ensure that the crime victim is afforded the rights" contained therein, which rights include "the right to reasonable, accurate, and timely notice of any public court proceeding" involving the defendant's release. 18 U.S.C. §§ 3771(a)(2), (b)(1).

## CONCLUSION

In summary, Vigil has not exhausted his administrative remedies in order for this Court to review his request for relief. Even so, Vigil has not provided any

---

[3] There are four bank victims that have been notified of this proceeding. Their responses are currently pending but are due back to the United States no later than July 6, 2020. The United States requests that, in the event that the victims respond, a supplement to this motion may be filed for the sole purpose of submitting victim's responses, if any, no later than July 7, 2020 – one day following the date victim responses are due in this case.

documentation *that support the severity*, or otherwise, of any of his conditions in order to satisfy the requirements for compassionate release. If this Court should somehow determine that he is eligible for compassionate release, the 3553(a) factors *strongly* mitigate against his release and should be taken into consideration. Accordingly, his motion for compassionate release should be denied. Doc. 118.

THEREFORE, this Court should deny Vigil's supplemental motion for compassionate release based on COVID-19 concerns. Doc. 118.

        Respectfully submitted,

        MARIA CHAPA LOPEZ
        United States Attorney

By:   */s/ Beatriz Gonzalez*
      BEATRIZ GONZALEZ
      Assistant United States Attorney
      Florida Bar No. 0084214
      300 N. Hogan Street, Suite 700
      Jacksonville, Florida 32202
      Telephone:  (904) 301-6300
      Facsimile:   (904) 301-6310
      E-mail:      Beatriz.Gonzalez@usdoj.gov

**U.S. v. Daniel William VIGIL**                     **Case No.** 3:09-cr-322-TJC-PBD

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2020, a true and correct copy of the foregoing document and the notice of electronic filing were sent to the following CM/ECF participant(s):

    Juliann Welch, Esq.

                                */s/ Beatriz Gonzalez*
                                BEATRIZ GONZALEZ
                                Assistant United States Attorney